## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GWENDOLYN G. CARANCHINI,

    Plaintiff,

v.

LOLA PECK, et al.,

    Defendants.

Case No. 18-2249-CM-TJJ

## MEMORANDUM AND ORDER

This matter is before the court on defendants Lola Peck and Rick Peck's Joint Motion for Attorney Fees and Sanctions Pursuant to K.S.A. 2016 Supp. 60-5320 (anti-SLAPP statute) (Doc. 131). Defendants filed a motion to strike pursuant to K.S.A. § 60-5320, the Public Speech Protection Act ("the Act"), which this court granted in part and denied in part. (Doc. 121.) Defendants now seek attorney fees and sanctions they claim they are entitled to under the Act. For the reasons set forth below, the court grants defendants' motion in part and denies it in part.

**I.    Background**

Plaintiff Gwendolyn G. Caranchini, a former attorney[1], and defendant Rick Peck were involved in an extra-marital affair. At some point Rick and his wife, defendant Lola Peck, filed for a Temporary Restraining Order ("TRO") against plaintiff. At the time the TRO was filed, defendants were divorced but apparently still living together.

---

[1] Plaintiff admits she has been disbarred by the State of Missouri, the United States District Court for the Western District of Missouri, the United States District Court for the District of Kansas, the Eighth Circuit Court of Appeals, the United States Supreme Court, and possibly the Tenth Circuit Court of Appeals. She does not have an active license in any jurisdiction. She claims however, that she was advised that she could still appear in front of the Merit Systems Protection Board and the Equal Employment Opportunity Commission and could "hold herself out as an attorney." (Doc. 85, at 2–3.)

-1-

On February 9, 2017, plaintiff appeared in front of a Johnson County District Court magistrate judge for a hearing on the TRO. At the conclusion of the hearing, deputies from the Johnson County Sheriff's Department arrived to arrest plaintiff on telephone harassment charges. These charges involved defendants. Plaintiff was taken to the Johnson County Jail, where she was held until she was released the following evening on bond. She was incarcerated for approximately 36 hours. The telephone harassment charges were eventually dismissed.

Plaintiff filed a 147-page complaint on May 14, 2018, naming the Pecks, Johnson County Sheriff Calvin Hayden and individuals at the Johnson County Detention Center, and various individuals from the Johnson County District Court and District Attorney's Office as defendants. Specifically, against the Pecks, plaintiff claimed:

- Libel/slander against Rick and Lola Peck for the false filing of the TRO and false testimony by Rick Peck during the TRO hearing,
- Libel/slander against Lola Peck for filing false paperwork on the telephone harassment charge and for making false statements to Assistant District Attorneys John Fritz and Michael McElhinney,
- Harassment/threat of bodily harm against Lola Peck,
- Conspiracy to incarcerate against Lola Peck,
- Libel/slander against Lola Peck for claiming plaintiff was "in need of a mental examination" in documents filed in the telephone harassment case.

Defendants moved to strike the claims against them under the Act, arguing plaintiff's claims arose from the class of privileged communications defined by and protected by the Act. This court granted defendants' motion in part, finding claims against them for libel and slander in regard to their conduct surrounding the filing of the TRO and the telephone harassment charges were protected under the Act. The court did not extend the Act's protections to plaintiff's claims against Lola Peck for harassment/threat of bodily harm or for claims that Lola Peck paid money to an Assistant District Attorney in order to secure criminal charges and plaintiff's arrest and incarceration. These claims were later dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In its order dismissing the claims, this court directed defendants to file a motion detailing their request for fees and/or sanctions as provided by K.S.A. § 60-5320. This motion is now before the court.

**II.     Analysis**

Enacted in 2016, the Act—also known as an "anti-SLAPP" statute—was passed to protect against "meritless lawsuits that chill free speech," known as SLAPPs, or "strategic lawsuits against public participation." *See* Eric Weslander, *The First Amendment Slapps Back: An Overview of the Free-Speech Protections of Kansas' New Anti-SLAPP Statute*, J. Kan. B. Ass'n, January 2018, at 30, 31. The stated purpose of the statute is to "encourage and safeguard the constitutional rights of a person to petition, and speak freely and associate freely, in connection with a public issue or issues of public interest . . . while, at the same time, protecting the rights of a person to file meritorious lawsuits for demonstrable injury." K.S.A. § 60-5320(b). Under the Act, a party may bring a motion to strike the claim if it is "based on, relates to or is in response to a party's exercise of the right of free speech, right to petition or right of association." K.S.A. § 60-5320(d).

A party prevailing on its motion to strike may seek attorney fees and sanctions. *See* K.S.A. § 60-5320(g). Specifically, this provision states that a court shall award, without regard to any limits under state law:

> (1) Costs of litigation and reasonable attorney fees; and (2) such additional relief, including sanctions upon the responding party and its attorneys and law firms, as the court determines necessary to deter repetition of the conduct by others similarly situated.

K.S.A. § 60-5320(g). The Act goes on to state that "[t]he provisions of the public speech protection act shall be applied and construed liberally to effectuate its general purposes." K.S.A. § 60-5329(k). Beyond these statutory provisions, there is little guidance or precedent to help the court determine what costs, fees, or sanctions are appropriate after claims have been stricken under the Act.

Defendants, citing the "applied and construed liberally" provision of the Act, argue that they are entitled to recovery of all attorney fees associated with the litigation of this case and request "additional relief" in order to deter plaintiff from filing future claims that are covered under the Act. Defendants request $95,576 in attorney fees, and for additional relief, defendants suggest the court could monetarily sanction plaintiff, require plaintiff to appear and produce financial records, or order plaintiff to pay attorney fees for another case she filed against defendants in Missouri.

In response, plaintiff argues defendants' requested attorney fees are unreasonable, particularly because their attorney did not attempt to mitigate his costs because he refused to meet with or talk to plaintiff. She also claims that the fees are unreasonable because the reported hours spent are excessive.

    *a. Reasonable Attorney Fees and Costs*

"When state law governs whether to award attorney fees . . . that state law also governs how to calculate the amount." *Okla. Instrastate Transmission, LLC v. 25 Foot Wide Easement*, 908 F.3d 1241, 1246 (10th Cir. 2018). In Kansas, "a lawyer's fee shall be reasonable." KRPC 1.5(a). Kansas courts look to the eight factors in Rule 1.5 of the Kansas Rules of Professional Conduct when determining whether a request for attorney fees is reasonable, "including the reasonableness of a fee allowed to a prevailing party by statute." *Snider v. Am. Family Mut. Ins. Co.*, 298 P.3d 1120, 1129 (Kan. 2013). These eight factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent.

KRPC 1.5(a)(1)–(8). Even if the statute at issue mandates an award of attorney fees, "the amount of the award is within the sound discretion of the awarding court . . . ." *Snider*, 298 P.3d at 1129. The trial court "is an expert in the area of attorney fees and can draw on and apply its own knowledge and expertise in determining their value." *Snider v. Am. Family Mut. Ins. Co.*, 244 P.3d 1281, 1285 (Kan. Ct. App. 2011).

Here, defendants maintain they are entitled to all fees related to the litigation, not just the fees incurred in relation to their motion to strike. They argue that the attorney provision of the Act should be broadly interpreted to include all of their requested fees "including preparatory work, all work associated with this litigation, as well as the instant Motion for Attorneys' Fees. . . ." (Doc. 131, at 5.) Defendants included the following summary request for fees:

| Action | Hours | Fees |
| --- | --- | --- |
| Initial Analysis, Strategy and Defense | 61.8 | $19,776 |
| Lawsuit Activities | 107 + 38 (emails) 145 | $46,400 |
| Motion for Attorney Fees | 95 | $30,400 |
| Reply to Caranchini Response to Motion for Fees | TBD | TBD |
| TOTAL (excluding Reply) | 301.8 | $96,576 |

(*Id.*) Defendants also attached an affidavit from counsel and a detailed itemization of the specific tasks that counsel billed. Defendants argue that their fee request is reasonable under the 1.5 factors because of the novel and complex legal questions raised by the case and the efforts expended by counsel to combat aggressive litigation tactics and gamesmanship. Defendants also claim that they are entitled to the requested fees because of the exceptional results achieved by their counsel.

First, the court notes that according to his affidavit, defense counsel's hourly rate is $320 per hour. Plaintiff did not object to this rate, and the court has no reason to believe this is not a reasonable

hourly rate. The court, however, believes that defendants' request for attorney fees as a whole is unreasonable.

Defendants argue that the Kansas Act is similar to the Texas anti-SLAPP act because it provides for both mandatory attorney fees and sanctions. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.009. According to defendants, Texas courts have interpreted the Texas statute to include attorney fees for preparatory work and for fees that were incurred after the case was dismissed. *See Am. Heritage Capital, LP v. Gonzalez*, 436 S.W. 3d 865, 880 (Tex. App 2014) *disapproved of on other grounds by Hersh v. Tatum*, 526 S.W. 3d 462 (Tex. 2017). (noting that the term "legal action" in the statute as defined includes "cause[s] of action," and is not limited to formal judicial pleadings and proceedings, therefore, the attorney was entitled to pre-joinder attorney fees if he incurred them to defend against the cause of action); *Cruz v. Van Sickle*, 452 S.W. 3d 503, 526 (Tex. App. 2014) (finding that—when liberally construing the Texas Act—an attorney was entitled to fees incurred after the dismissal order because all of the fees were in connection with the attorney's defense of the lawsuit.). Defendants argue that they should therefore be able to recover all attorney fees incurred throughout this litigation.

Another Texas court, however, disagreed with this interpretation. The Texas statute states that the court shall award "court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action. . . ." Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(1). In *McGibney v. Rauhauser*, the Texas Court of Appeals held that "the phrase 'incurred in defending the legal action' applies only to the award of other expenses, not attorney's fees." 549 S.W. 3d 816, 820 (Tex. App. 2018). Therefore, a court may award "other expenses" (which does not include court costs or attorney fees) only if "incurred in defending against the legal action as justice and equity may require" per the statutory language. *See id*. In regard to attorney fees, the statute only requires that they be "reasonable." *See id.*

Here, the court believes the rationale in *McGibney* is more analogous to the Kansas Act than the cases cited by defendants. The language of the Kansas Act states that court shall award "costs of litigation and reasonable attorney fees." K.S.A. § 60-532(g). Thus, the only requirement is that the attorney fees be reasonable. The statute is silent on whether these attorney fees must include all fees related to the litigation, or only fees incurred while pursuing remedies under the Act.

Defense counsel provided the court a detailed billing summary of his pre-litigation work, his work after the complaint was filed, and his motion for attorney fees. He claims he spent 301.8 total hours on pre-litigation preparation and lawsuit activities. This includes 95 hours spent on one 14-page motion for attorney fees. But parts of the billing summary contain work that was not related to the motion to strike. Defense counsel included several pages of time he billed reviewing emails from plaintiff and entries for time spent reviewing other motions filed by other defense attorneys in the case. Defense counsel also included time spent drafting a motion to dismiss the remaining claims that the court did not strike as part of defendants' motion to strike under the Act.

Under Kansas law, the number of hours spent are one factor, among several, to consider in determining the reasonableness of the fee. *See Freebird, Inc. v. Cimarex Energy Co.*, 264 P.3d 500, 509 (Kan. App. 2011); *see also Snider*, 298 P.3d at 1130 (noting, "Kansas generally does not use *only* the lodestar method to calculate attorney fee awards under state statutes.") (emphasis added). A party must make a "good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary," and the district court should evaluate the reasonableness of hours spent "much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients . . . ." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

Exercising its discretion, the court believes that reasonable attorney fees in this particular case should be reduced to account for the reasonable amount of time defense counsel spent on motion to strike

activities. The court believes, under the language of K.S.A. § 60-5320, that time spent on claims that were not disposed of in the motion to strike should not be included in the fee award. The court therefore reduces the fee request for lawsuit activities by 10% to exclude time spent on the motion to dismiss and other unrelated activities.

As for the remaining fees, the court must apply the 1.5 factors to decide what is a reasonable award. The court is familiar with the parties and issues in this case and recognizes that defense counsel likely had to expend a great deal of time in reading and responding to plaintiff's correspondence. The court also recognizes that K.S.A. § 60-5320 is a fairly new law with little to no judicial interpretation or precedent. Defendants' motion to strike required this court to resolve an issue of first impression. The court accounts for this when reviewing the hours spent by defense counsel.

But the court is particularly troubled by what it perceives is an excessive amount of time spent on defendants' 14-page motion for attorney fees. Defense counsel claims he spent 95 hours researching and drafting the motion. The court recognizes, again, that because K.S.A. § 60-5320 has not been interpreted by Kansas courts, defense counsel had to expend time researching other jurisdictions. However, much of the motion was simply the application of defense counsel's work to the Rule 1.5 factors that are well-established under Kansas law. The court also compares the 95 hours spent on this motion to the *two* total hours defense counsel spent drafting the motion to dismiss for the claims that were not disposed of by the motion to strike. While less research was likely required of that motion, the court is wary of the large disparity in the time necessary for defense counsel to prepare one motion over another.

When considering the Rule 1.5 factors, the court believes it is reasonable to reduce defendants' request for attorney fees on the motion for attorney fees by 75%. The court will therefore award defendants $69,136 in reasonable attorney fees.

### b. Additional Sanctions

As mentioned above, the Act states that the court shall award "such additional relief, including sanctions upon the responding party and its attorneys and law firms, as the court determines necessary to deter repetition of the conduct by others similarly situated." K.S.A. § 60-5320(g). Defendants ask the court to award some form of additional relief in order to deter plaintiff from filing similar lawsuits including monetary sanctions; ordering plaintiff to appear and produce her financial records and to answer questions about her finances; or ordering plaintiff to pay defendants' attorney fees in her recent litigation against them.

In considering what "additional relief" may be necessary, the court must first consider the Legislature's motivation in including this particular provision. During a House Judiciary Committee hearing on HB 2054—the bill that eventually became K.S.A. § 60-5320—Representative Jan Pauls, who first introduced the bill, testified that the anti-SLAPP law was intended to "provide a timely remedy from SLAPP suits." *Testimony on HB 2054: Hearing on HB 2054 Before the House Judiciary Committee*, Jan. 29, 2015 (statement of Rep. Jan Pauls) *available at* http://www.kslegislature.org/li_2016/b2015_16/committees/ctte_h_jud_1/documents/testimony/20150129_01.pdf.

She explained that SLAPP stands for "Strategic Lawsuits Against Public Participation" which "usually refers to the all too common use of the Courts to intimidate and silence people of limited means who exercise their first amendment rights of free speech." *Id.* She went on to explain:

> The goal of the plaintiff in these cases is not to win a lawsuit but to drag their target into court and bury them with attorney fees and demands upon their time and often inflict stress and emotions that come with looming court battles.

*Id.* Also at the House Judiciary Committee hearing on the bill, Mike Kautsch, a law professor from the University of Kansas School of Law, testified that:

> [SLAPP] lawsuits lack merit and have no purpose except to stifle criticism on issues of interest to the public. The suits generally are brought by well-funded individuals or entities against critics who lack the means to defend themselves. Because the critics cannot afford to litigate in defense of their freedom of speech, they suffer defeat in court and fall silent to avoid further, unaffordable legal action. The misuse of legal proceedings to suppress speech is a widely recognized problem, and so is the solution, which is Anti-SLAPP statutes like the one proposed by HB 2054 . . . SLAPP cases filed by one private party to suppress public criticism by another are common. As has been noted, "The paradigm case is a real estate developer filing a defamation or tortious interference suit against a citizen who has spoken out publicly against a proposed development project."

*Statement on HB 2054—Public Speech Protection Act: Hearing on HB 2054 Before the House Judiciary Committee*, Jan. 29, 2015 (statement of Mike Kautsch, Professor, University of Kansas School of Law) *available at* http://www.kslegislature.org/li_2016/b2015_16/committees/ctte_h_jud_1/documents/testimony/20150129_02.pdf.

Rep. Pauls also mentioned that at the time the bill was being debated, 28 states, the District of Columbia, and Guam all had anti-SLAPP type of legislation. Pauls, supra. Anti-SLAPP litigation in other jurisdictions include scenarios such as:

• A coal-energy executive and his affiliated companies suing HBO personality John Oliver over a satirical report that likened him to the comic movie character "Dr. Evil." (This suit was filed in state court in West Virginia, which has no anti-SLAPP statute; nevertheless, the suit has been widely analyzed under the rubric of SLAPP-type suits).

• A weekly newspaper publisher suing the publisher of competing publication, alleging defamation based on competing publisher's non-actionable opinions.

• A forest-products company suing the environmental group Greenpeace International, along with various affiliate groups, executives and board members, alleging violation of RICO statutes and other causes of action over allegedly "false and misleading" information disseminated by the group.

• A plaintiff suing the founder of the website "TechDirt.com" for $15 million over a series of detailed, factually supported articles challenging the plaintiff's assertion that he invented email.

• The owner of the Washington Redskins suing the Washington City Paper over factually supported articles criticizing him.

Weslander, supra, at 32.

The court believes that when the Kansas Legislature passed HB 2054, its intent was to protect against SLAPP lawsuits of the nature as discussed above. The language of the statute, however, casts a wide net and conduct other than that imagined or intended by the Legislature will inevitably fall under its protections. Here, there is no evidence that plaintiff filed the present litigation with the intent to "stifle criticism on issues of interest to the public," or to "intimidate and silence people of limited means who exercise their first amendment rights of free speech." *See* Kautsch, supra; Pauls, supra. In her complaint, plaintiff sought relief for what she believed was a wrongful prosecution and incarceration and for civil rights violations she allegedly experienced while incarcerated. Specifically, however, in her claims against defendants, plaintiff's pleadings demonstrate that her claims were "less based on plausible legal theories than [] based on the collateral damage that followed the end of her alleged relationship with one of the defendants." *Caranchini v. Peck*, 4:17-CV-00667-GAF (W.D. Mo. Dec. 19, 2017) (dismissing plaintiff's nearly identical claims against the same defendants in the present case for lack of personal jurisdiction). For example, plaintiff spent much of her 147-page complaint detailing her relationship—and importantly the end of her relationship—with defendant Rick Peck, and she made salacious allegations against Rick's wife, defendant Lola Peck. Her claims against defendants were for libel and slander related to what she believed to be a wrongful prosecution, and for harassment against Lola Peck for alleged conduct related to plaintiff's extra-marital affair with Rick Peck. In short, plaintiff's lawsuit was more of a personal crusade in response to the end of her relationship rather than an attempt to stifle Rick and Lola Peck's First Amendment rights. The court does not believe that plaintiff's claims against these defendants are the type of claims that the Legislature intended K.S.A. § 60-5320 to protect against.

So, when the statute mandates awarding "such additional relief . . . as the court determines necessary to deter repetition of the conduct by others similarly situated," it seems that the Legislature

intended to deter conduct utilized in the traditional SLAPP-type cases. In her testimony to the House Judiciary Committee, Rep. Pauls noted that "[a]n 'anti-SLAPP' law is meant to provide a timely remedy from SLAPP suits." Pauls, supra.

The present matter, although falling under the umbrella of Kansas's anti-SLAPP statute, is not the type of SLAPP litigation the statute is meant to protect against. The court is therefore not inclined to impose sanctions against plaintiff. Indeed, plaintiff should be deterred from filing meritless lawsuits or harassing opposing counsel with excessive emails. But the court does not believe that it should award defendants additional monetary sanctions in order to deter plaintiff—or others similarly situated to plaintiff—using the deterrence mechanisms included in this particular statute. This sanction provision is specifically designed for SLAPP cases and should not be used as a general method for sanctioning litigants.

Defendants argue that the court is required to award sanctions under the provision. They maintain that the Kansas anti-SLAPP statute is most similar to the Texas anti-SLAPP statute, which does mandate additional sanctions above and beyond attorney fees. Under the Texas statute, "the court shall award the moving party . . . sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(2). The Texas Court of Appeals recently noted that the Texas Citizens Participation Act ("TCPA") "mandates an award of sanctions in addition to the award of attorneys' fees," and therefore, "[a]ttorneys' fees . . . do not appear to be awarded as a sanction." *Landry's, Inc. v. Animal Legal Defense Fund*, 566 S.W. 3d 41, 70 (Tex. App. 2018). The court explained that additional sanctions beyond attorney fees are necessary because the TCPA's purpose is "to prevent the bringing of meritless lawsuits that discourage the exercise of certain constitutional rights." *Id*. In these cases, attorney fees are like compensatory damages—they make whole the party "whose protected

conduct is the subject of the claim," because that party is forced to bear the cost of vindicating those rights. *Id*. But sanctions are awarded "'to deter the party who brought the legal action from bringing similar actions' in the future." *Id.* In this particular case, corporate operators of a restaurant that housed a live tiger exhibit brought an action for defamation, business disparagement, tortious interference with prospective business relations, abuse of process, trespass, and conspiracy arising out of the activists' publication of a notice of intent to sue the operators under the Endangered Species Act for their alleged mistreatment of the tigers. The activists successfully filed a motion to dismiss under the TCPA and the trial court awarded them $450,000 in sanctions (which was later reduced by the Texas Court of Appeals). *Id.* at 70, 74.

Again, the court does not believe the facts of the present case are at all analogous to *Landry's, Inc.* or any of the traditional SLAPP cases that have prompted the anti-SLAPP legislation response. In *Landry's, Inc.*, plaintiff was a large dining, hospitality, and entertainment corporation that attempted to stifle the First Amendment rights of animal rights activists using expensive litigation. Here, Plaintiff is a woman in her 70s, seeking redress for what she believed was an illegal prosecution and incarceration. She believed defendants made false statements and conspired with the District Attorney's office to secure her arrest and incarceration. Defendants chose to use the motion to strike provision in K.S.A. § 60-5320 rather than filing a traditional motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure. The court found that some of plaintiff's allegations fell under the broad language of K.S.A. § 60-5320, and therefore it was appropriate to strike those claims under K.S.A. § 60-5320. But in this case, the court does not believe that additional sanctions are necessary, because the court does not believe plaintiff—or others similarly situated to plaintiff—needs to be deterred from filing future SLAPP cases. Plaintiff did not file a traditional SLAPP case. Harsh sanctions are not justified using this statute—a statute designed to protect against SLAPP litigation.

The language of K.S.A. § 60-5320(g) states that the court shall award the defending party additional relief "*as the court determines necessary* to deter repetition of the conduct by others similarly situated." (emphasis added.) The court does not believe in this case, under these specific circumstances, that monetary sanctions are necessary to deter the repetition of the conduct by plaintiff or any others similarly situated. To the extent that the statute does in fact mandate *some* form of additional relief beyond attorney fees, the court orders that filing restrictions be imposed on plaintiff. The court believes filing restrictions would be an appropriate form of relief considering plaintiff's lengthy and abusive litigation history, and her disregard of this court's warning in its order denying filing restrictions (Doc. 128). The court will adopt filing restrictions it has used in the past which are based on similar restrictions imposed in this Circuit. *See Landrith v. Kan. Attorney Gen.*, No. 12-2161-CM, 2012 WL 5995342, at *7 (D. Kan. Nov. 30, 2012). The filing restrictions are set forth in Appendix A.

**IT IS THEREFORE ORDERED** that defendants Lola Peck and Rick Peck's Joint Motion for Attorney Fees and Sanctions Pursuant to K.S.A. 2016 Supp. 60-5320 (anti-SLAPP statute) (Doc. 131) is granted in part and denied in part. Plaintiff is ordered to pay defendants' reasonable attorney fees in the amount of $69,136 pursuant to K.S.A. § 60-5320(g)

**IT IS FURTHER ORDERED** that pursuant to K.S.A. § 60-5320(g), the court will order the following filing restrictions be imposed on plaintiff as "additional relief . . . the court determines necessary to deter repetition of the conduct . . . ."

**IT IS FURTHER ORDERED** that plaintiff shall have ten days from the date of this order to file written objections, limited to ten pages, to these proposed filing restrictions. If plaintiff does not file timely objections, the filing restrictions shall take effect 20 days from the date of this order. If plaintiff does file timely objections, these filing restrictions shall not take effect unless the court rules against her objections.

Dated August 30, 2019, at Kansas City, Kansas.

                                              s/ Carlos Murguia
                                              **CARLOS MURGUIA**
                                              **United States District Judge**

**Appendix A**

*Injunction*

Unless she first obtains leave to proceed pro se, Gwendolyn G. Caranchini is ENJOINED from filing any claim in the United States District Court for the District of Kansas in or related to the subject matter of District of Kansas case number 18-2249-CM without the representation of an attorney licensed to practice in the State of Kansas and admitted to practice in this Court. Caranchini is further ENJOINED from commencing any pro se litigation in this court against the persons, entities, and counsel of the parties involved in 18-2249-CM unless she first obtains leave to proceed pro se or unless she is represented by counsel as set forth above.

*Procedures for Petition Seeking Leave to File Pro Se Action*

Any documents which plaintiff wishes to submit for filing shall be mailed or hand-delivered during regular business hours to the Clerk of the United States District Court, 500 State Avenue, Kansas City, Kansas 66101. As a prerequisite to filing a pro se complaint, plaintiff must submit three documents:

(1) "Petition Pursuant to Court Order Seeking Leave to File a Pro Se Action";

(2) An affidavit as directed below; and

(3) The complaint which plaintiff proposes to file in this court.

1. The Petition Pursuant to Court Order Seeking Leave to File a Pro Se Action must contain the following information:

(a) As to each defendant, whether that defendant previously was a party, or was in any way involved in, any prior lawsuit by plaintiff, and if so, in what capacity; and

(b) As to any state or federal lawsuit to which plaintiff is or has been a party, the case caption, plaintiff's involvement in the suit, the status and disposition of each lawsuit.

2. The affidavit shall be in proper legal form and must state the following: 1) whether plaintiff has previously raised the proposed claims in any federal or state court; and 2) that the pleading is filed in good faith, is not malicious, and has arguable merit.

3. The proposed complaint must comply with this order, the Federal Rules of Civil Procedure, and the Local Rules of Practice of the United States District Court for the District of Kansas.

If plaintiff submits a petition for leave to file a pro se action pursuant to this order, the Clerk of the Court will accept the documents, mark them received, and immediately forward them to the undersigned judge. Failure to comply with the procedures and principles mandated by this order shall be sufficient grounds for denying plaintiff's petition. If the court grants the petition, the Clerk of the Court shall file the complaint and related materials effective the date of the order. The case shall be assigned pursuant to the Local Rules of Practice.

This order shall not interfere with pending federal litigation which involves plaintiff.